922 A.2d 750

ELLA JACKSON, THOMAS NASCE, AND JULIA NASCE, PLAIN-
TIFFS–RESPONDENTS/CROSS–APPELLANTS, v. HSBC BANK
USA, SUCCESSOR IN INTEREST TO REPUBLIC NATIONAL
BANK OF NEW YORK, DEFENDANT–APPELLANT/CROSS–
RESPONDENT, AND RTL PARTNERS, L.P., GLENRIVER, INC.,
AND TAX LIEN SERVICE CORPORATION, DEFENDANTS.

HSBC BANK USA, SUCCESSOR IN INTEREST TO REPUBLIC
NATIONAL BANK OF NEW YORK, THIRD–PARTY PLAIN-
TIFF, v. RTL TRUST, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 2007—Decided May 4, 2007.

Before Judges COBURN, AXELRAD and R.B. COLEMAN.

*Gerald A. Liloia* argued the cause for appellant/cross-respondent (*Riker Danzig Scherer Hyland & Perretti,* attorneys; *Mr. Liloia,* of counsel; *Mr. Liloia and David R. Hausmann,* on the brief).

*Jeffrey W. Herrmann* argued the cause for respondents/cross-appellants (*Cohn Lifland Pearlman Herrmann & Knopf, and Greenberg Dauber Epstein & Tucker, and Lawrence S. Klitzman,* attorneys; *Mr. Herrmann, Russell S. Burnside, and Mr. Klitzman,* of counsel and on the brief).

*Keith A. Bonchi* argued the cause for amicus curiae Tax Collectors and Treasurers Association of New Jersey (*Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill,* attorneys; *Mr. Bonchi,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

In 2000, plaintiffs, who are real estate property owners in a number of municipalities, filed this class action lawsuit. They alleged that defendant HSBC Bank USA ("HSBC"), which held tax sale certificates ("TSCs") on their properties, had violated the Tax Sale Law, *N.J.S.A.* 54:5–1 to—137 ("TSL").[1]

More specifically, they challenged the private installment payment plan agreements ("IPPs"), which they voluntarily entered into with HSBC in connection with those TSCs. The IPPs gave each property owner the right to pay off the TSC in installments, while retaining the right to redeem it by a lump sum payment if funds became available. Thus, the IPPs allowed a property owner to avoid the cost of defending against the otherwise justified institution of foreclosure proceedings and loss of the property.

Plaintiffs did not argue that IPPs were not permitted at all under the TSL. Rather, they claimed that since HSBC knowingly included charges and other non-monetary burdens in the IPPs that are not set forth in the TSL, they are entitled to the remedies contained in the TSL. Those remedies include forfeiture of the TSC to each plaintiff and recovery of any payments made pursuant thereto. Plaintiffs also claimed the right to damages under the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to—135 ("CFA"). HSBC contended that plaintiffs are only entitled to reformation with respect to any conditions included in the IPPs that are not provided for in the TSL and not to damages under the CFA.

The issues were resolved on cross-motions for summary judgment. The order under appeal declared that HSBC was liable to plaintiffs for violating the TSL; that the IPPs were to be reformed with the class members recovering the amount of charges unauthorized by the TSL; and that there would be a trial of the following issues: (1) "the amount of unauthorized charges exacted

---

[1] Although there are other defendants, the parties have litigated the case as if HSBC were the only defendant. Thus, we assume that disposition of the claims against HSBC will resolve the entire controversy.

from the class members under the IPPs;" (2) "whether [HSBC] engaged in an unconscionable commercial practice violative of the [CFA];" and (3) "the ascertainable loss sustained by the class members as a result of any such unconscionable commercial practice." By implication, the order denied both HSBC's motion for summary judgment dismissing the CFA claim and plaintiffs' motion for the statutory relief provided by the TSL.

We granted the parties leave to appeal. We determine that the only relief to which plaintiffs are entitled is reformation of the TSCs in accordance with the guidelines established by the Supreme Court in *Varsolona v. Breen Capital Services Corp.*, 180 *N.J.* 605, 628–30, 853 *A.2d* 865 (2004). They are not entitled to the remedies contained in the TSL and, in the circumstances of this case, they are also not entitled to relief under the CFA.

## I

The relevant facts may be briefly summarized as follows. In 1995, HSBC entered into a loan agreement with defendant RTL Partners, L.P. ("RTL"). The financing allowed RTL to purchase TSCs jointly in the names of HSBC and RTL and required RTL to assign the TSCs to HSBC. Although RTL appears to have dealt with most of the TSCs in the ordinary course under the TSL, it also entered into the ninety-one IPPs at issue in this case for itself and for HSBC and assigned those IPPs to HSBC.

These are the terms of the IPPs about which plaintiffs complain, as described in their brief:

1. A document preparation fee ranging between $250 and $1000 which could be assessed one time or annually. . . .

2. A late fee of $50 should payment be made after the fifth day of the month.

3. Legal fees and foreclosure fees.

4. Compound interest and interest on any legal or foreclosure fees.

. . . [T]he agreements . . . had the following non-monetary requirements not permitted by statute:

1. Property owner required to maintain fire and casualty insurance in an amount at least equal to the tax lien.

2. Requirement that defendants be made first loss payee on such insurance (which may well be in breach of a class member's mortgage obligation).

3. Property owner required to make all repairs necessary to maintain the property.

4. The lien holder had the right to enter and inspect the tax payer's property on notice.

## II

In *Varsolona, supra,* the Court held that "[a] municipality's statutory authority to enter into IPPs can be transferred with the bulk sale of its TSCs. However, the purchaser ... must adhere to the TSL's framework of responsibilities and restrictions as imposed on municipalities." 180 *N.J.* at 622, 853 *A.2d* 865. But it also observed that it regarded "minor technical deviations [were] permissible so long as the intent and purpose of the TSL are not violated," *id.* at 629, 853 *A.2d* 865, and that the remedy for the other deviations was reformation, *id.* at 628–30, 853 *A.2d* 865. Finally, the Court had this to say respecting the *Varsolona* plaintiffs' claims under the CFA:

> Having held that it was permissible for Jersey City to have authorized defendants to issue IPPs as part of the bulk sale of its TSCs, we find no *per se* violation of the New Jersey Consumer Fraud Act. The plaintiffs claimed a CFA violation based on the IPPs' irregular compliance with *Title* 54. Notwithstanding the adjustments that may be necessary to bring these transactions into compliance with the requirements of *Title* 54 as described in this opinion, we find no evidence of the type of unconscionable commercial practice violative of the CFA.
>
> [*Id.* at 630, 853 *A.2d* 865.]

Plaintiffs argue that the instant case is distinguishable from *Varsolona* because here the IPPs were not authorized by a municipality. Therefore, they claim that they are entitled to the statutory remedy of forfeiture and recovery of all amounts paid under the TSCs. *N.J.S.A.* 54:5–63.1.[2] But at the same time, they

---

2 That section reads as follows:

Any holder of a tax sale certificate, excepting any municipal corporation, his agent, servant, employee or representative, who knowingly charges or exacts any fee or charge in connection with the redemption of any tax sale certificate owned by him, in excess of the amounts permitted by chapter five

also concede that "[s]ection 63.1 does not outlaw private IPPs or other private redemption arrangements." That was the conclusion reached by the Appellate Division in *Varsolona v. Breen Capital Services Corp.*, 360 *N.J.Super.* 292, 304–11, 822 *A.*2d 663 (App.Div.2003), *aff'd as modified and remanded*, 180 *N.J.* 605, 853 *A.*2d 865 (2004). Although the Supreme Court based its ruling on the municipality's express statutory authorization to enter into IPPs and implicit authority to transfer that authority to a private entity, it took note of the Appellate Division's broader approach to the issue without negative comment. *Varsolona, supra,* 180 *N.J.* at 616, 853 *A.*2d 865. In any case, once plaintiffs concede, as they have done here, that entirely private IPPs are permissible, there is no logical basis for not applying the remedy dictated by the Supreme Court. In other words, the source of the authority, whether statutory or common law, makes no difference, so long as the right to enter into the contract is recognized. Of course, the statutory remedy remains with respect to the redemption of TSCs in the ordinary course. And as to the IPPs, property holders are protected by the remedies authorized by the Supreme Court in *Varsolona.*

■ Last, we turn to the trial court's opinion denying HSBC's motion for summary judgment on the CFA claim. After properly rejecting HSBC's contention that IPPs could never give rise to a CFA claim under *Varsolona,* the trial court had this to say:

Plaintiffs point to a number of distinctions between these IPPs and those examined in *Varsolona.* Most notable are the non-monetary provisions of the

---

of *Title* 54 of the Revised Statutes, shall forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee and the person paying such unlawful charge shall become vested with all the right, title and interest of such tax sale certificate holder in and to such tax lien. In addition thereto the person aggrieved shall have a right of action to recover back the full amount paid by him to such tax lien holder, by an action at law in any court of competent jurisdiction.

The collection of any excessive charge or fee in connection with the redemption or assignment of a tax sale certificate shall be deemed prima facie evidence of the fact that such tax sale certificate holder did knowingly charge and exact such excessive fee or charge within the intent of this act.

contracts that accorded HSBC various "rights." In addition, plaintiffs point to the language contained in the contracts wherein RTL recognized the possible illegality of certain charges under the TSL. Whether under the totality of the circumstances, including the relationship between delinquent taxpayer and RTL and HSBC such facts establish evidence of an "unconscionable commercial practice" is indeed a determination left to the ultimate fact finder.

Although there are differences between these IPPs and the *Varsolona* IPPs, neither the trial court nor plaintiffs in their appellate briefs identify any particularly egregious aspect of the IPPs under consideration or explain why it should be considered an unconscionable commercial practice. The non-monetary provisions, which we have quoted above, extend to the lender protections well-recognized in ordinary commercial loan agreements secured by interests in real property, and the only thing inappropriate about them and the monetary requirements is that they are not contained in the TSL. In the words of the Supreme Court in *Varsolona*, plaintiffs presented "no evidence of the type of unconscionable commercial practice violative of the CFA." 180 *N.J.* at 630, 853 *A.*2d 865. Therefore, we reverse that part of the order under appeal denying HSBC summary judgment on plaintiffs' CFA claim.

Affirmed in part; reversed in part; and remanded for reformation in accordance with the procedures and guidance set forth in the Supreme Court's decision in *Varsolona.*